IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GLENDA ANDERSON and VICKI ANDERSON, | : : : | 4:08-cv-121 |
| Plaintiffs, | : : | |
| v. | : : | |
| RYAN MESURE, RICHARD LeCADRE, and WARREN CORNELIOUS, | : : : : | Hon. John E. Jones III |
| Defendants. | : | |

## MEMORANDUM

### October 16, 2009

**THE BACKGROUND OF THIS ORDER IS AS FOLLOWS**:

Pending before this Court are two Motions for Summary Judgment (collectively, the "Motions"), one filed by Defendants Ryan Mesure ("Mesure") and Richard LeCadre ("LeCadre") on March 12, 2009, (Doc. 54) (the "Measure Motion"), and one filed by Defendant Warren Cornelious ("Cornelious") on that very same day, (Doc. 57) (the "Cornelious Motion"). For the reasons that follow, the Motions shall be granted.

**I.  PROCEDURAL HISTORY:**

Plaintiffs Glenda and Vicki Anderson (the "Defendants" or the

"Andersons") initiated the instant action by lodging a Complaint against Defendants Mesure, LeCadre, and Cornelious (collectively, the "Defendants") on January 18, 2008 alleging deprivations of their First and Fourth Amendment rights in violation of 28 U.S.C. § 1983 and violations of the rights secured under the Pennsylvania Constitution. (Doc. 1). On November 25, 2008 we denied in part and granted in part two motions to dismiss the Plaintiffs' complaint such that the only viable claims proceeding to the discovery phase of litigation were Plaintiffs' federal and state malicious prosecution claims. (Doc. 42). After discovery concluded, the Defendants filed the instant Motions seeking summary judgment on those claims. (Docs. 54, 57).[1] Having been fully briefed, the Motions are ripe for disposition.

## II. STANDARD OF REVIEW:

Summary judgment is appropriate if the record establishes "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant meets this burden by

---

[1] Subsequent to the filing of these motions, Defendant LeCadre was voluntarily dismissed from the instant case. (*See* Docs. 68, 72). Accordingly, Defendant Mesure shall be the only subject of the Mesure Motion.

pointing to an absence of evidence supporting an essential element as to which the non-moving party will bear the burden of proof at trial. *Id.* at 325. Once the moving party meets its burden, the burden then shifts to the non-moving party to show that there is a genuine issue for trial. Fed. R. Civ. P. 56(e)(2). An issue is "genuine" only if there is a sufficient evidentiary basis for a reasonable jury to find for the non-moving party, and a factual dispute is "material" only if it might affect the outcome of the action under the governing law. *Anderson v. Liberty Lobby, Inc*, 477 U.S. 242, 248-49 (1986).

In opposing summary judgment, the non-moving party "may not rely merely on allegations of denials in its own pleadings; rather, its response must ... set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). The non-moving party "cannot rely on unsupported allegations, but must go beyond pleadings and provide some evidence that would show that there exists a genuine issue for trial." *Jones v. United Parcel Serv.*, 214 F.3d 402, 407 (3d Cir. 2000). Arguments made in briefs "are not evidence and cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion." *Jersey Cent. Power & Light Co. v. Twp. of Lacey*, 772 F.2d 1103, 1109-10 (3d Cir. 1985). However, the facts and all reasonable inferences drawn therefrom must be viewed in the light most favorable to the non- moving party. *P.N. v. Clementon Bd. of*

*Educ.*, 442 F.3d 848, 852 (3d Cir. 2006).

Summary judgment should not be granted when there is a disagreement about the facts or the proper inferences that a fact finder could draw from them. *Peterson v. Lehigh Valley Dist. Council*, 676 F.2d 81, 84 (3d Cir. 1982). Still, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; there must be a *genuine* issue of *material* fact to preclude summary judgment." *Anderson*, 477 U.S. at 247-48.

## III. STATEMENT OF MATERIAL FACTS:

On July 4, 2006, Plaintiffs visited the Boscov's Department store at the Camp Hill shopping mall. (Docs. 58, 65 ¶¶ 1). At the time, Defendant Mesure and former-Defendant LeCadre were working as Loss Prevention Detectives at Boscov's and conducted surveillance of the Plaintiffs as they shopped. (*Id.* ¶¶ 2). Defendant Mesure focused on the Plaintiffs because he believed he had witnessed them stealing jewelry on a previous visit to the store in June 2006. (*Id.* ¶¶ 4).[2] On July 19, 2006, Defendant Mesure reported to Defendant Cornelious, a police officer with the Camp Hill Police Department ("Camp Hill PD"), that he had

---

[2] Plaintiffs deny ever being in the Camp Hill Boscov's before July 4, 2006. (Doc. 65 Ex. 2, pp. 30-31).

witnessed Plaintiffs stealing a bracelet from Boscov's on July 4, 2006. (Docs. 58, 65 ¶¶ 3).

Defendant Cornelious informed Defendant Mesure that he would investigate the case and asked Mesure for any surveillance video and written statements associated with the aforementioned incident. (*Id.* ¶¶ 6).[3] These items were ultimately provided to Defendant Cornelious by Defendant Mesure and former-Defendant LeCadre. (*Id.* ¶¶ 8, 9).[4] As part of his investigation into the incident, Defendant Cornelious unsuccessfully attempted to contact the Plaintiffs so that he could obtain their version of the events in question. (*Id.* ¶¶ 11).[5] Defendant Cornelious ultimately located a valid mailing address to which he sent a citation charging Plaintiffs with retail theft and conspiracy to commit retail theft. (*Id.* ¶¶ 12).

---

[3] Prior to presenting the evidence to Defendant Cornelious, Defendant Mesure approached Sergeant McNaughton of the Camp Hill PD with the evidence against Plaintiffs and Sergeant McNaughton told him that it was insufficient to make a case against the Plaintiffs. (Doc. 65-4 p. 16).

[4] One document indicated that a 9" silver bracelet valued at $60 was missing from the jewelry rack in Boscov's. (Docs. 58, 65 ¶¶ 10). The surveillance video depicted both Plaintiffs gazing into the sales rack from which the bracelet was stolen. (*Id.* ¶¶ 20, 21). After Vicki Anderson pointed at the a bracelet on the sales rack, Plaintiff Glenda Anderson proceeded to palm it. (*Id.* ¶¶ 22). Plaintiffs' receipt from July 4, 2006 does not indicate that they purchased a bracelet for $60. (Doc. 65 ¶ 10).

[5] The inability to locate Plaintiffs was due in large part to the false information the Plaintiffs provided to various individuals on July 4, 2006. More specifically, the contact information provided to Officer Cornelious was invalid and the credit card application completed at Boscov's by Glenda Anderson also contained invalid information. (*Id.* ¶¶ 11).

Plaintiffs appeared before a magisterial district judge in Cumberland County, Pennsylvania who reviewed the evidence and bound the aforementioned charges over for trial. (*Id.* ¶¶ 13). Plaintiffs admit that they were never handcuffed, were not required to post bond or maintain contact with pretrial services, and were not limited in their ability to travel. (*Id.* ¶¶ 14).[6] A non-jury trial was held before the Honorable M.L. Ebert of the Cumberland County Court of Common Pleas on August 20, 2007. (*Id.* ¶¶ 16). Ultimately, Plaintiffs were acquitted of the charges lodged against them.[7]

After their acquittal, Plaintiffs lodged the instant action seeking, *inter alia*, recovery for malicious prosecution under both federal and state law. Those claims are the only viable claims remaining in the case *sub judice*.

## IV. DISCUSSION

The elements of a Fourth Amendment malicious prosecution claim and a state malicious prosecution claim under Pennsylvania law are nearly identical. Pursuant to the federal claim, Plaintiffs must show that: (I) the Defendants initiated criminal proceedings against them; (ii) the criminal proceedings terminated in their

---

[6] Plaintiffs do aver that they were compelled to attend certain proceedings under the threat of penalty for failing to appear. (Doc. 65 ¶ 14).

[7] Notably, at the conclusion of the trial, Judge Ebert stated to Plaintiffs, "You won this because the Commonwealth didn't prove [the charges] beyond a reasonable doubt. Make no mistake, there is plenty of suspicious activity here." (Docs. 58, 65 ¶¶ 26).

6

favor; (iii) the Defendants initiated the proceeding without probable cause; (iv) the Defendants acted maliciously or for a purpose other than bringing the Defendants to justice; and (v) the Plaintiffs suffered deprivation of liberty consistent with the concept of "seizure" as a result of the legal proceeding. *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003). Pursuant to their state law malicious prosecution claim, the Plaintiffs must show all of the aforementioned elements save for the fifth and final element. *See Bradley v. Gen. Accident Ins. Co.*, 778 A.2d 707, 710-11 (Pa. Super. Ct. 2001). Accordingly, we will analyze the elements common to both claims simultaneously.

### A. Claims Against Defendant Cornelious

Since Defendant Cornelious does not contest the first two elements of the federal malicious prosecution calculus, we will tailor our impending analysis to the additional elements of both federal and state malicious prosecution claims.

With regard to the third element, it is well established that probable cause exists "if at the moment the arrest was made . . . the facts and circumstances [within the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that [the suspect] had committed or was committing an offense." *Wright v. City of Philadelphia*, 409 F.3d 595, 602 (3d Cir. 2005) *see also Commonwealth v. Williams*, 941 A.2d 14, 27

7

(Pa. Super. Ct. 2007) ("Probable cause to arrest exists when the facts and circumstances within the . . . officer's knowledge and of which the officer has reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested.").

Further, as Defendants note, the fact that charges are bound over for trial, as they were in the present case, is *weighty*, not necessarily *conclusive*, evidence that probable cause existed for the arrest and prosecution of the alleged crime. *See Cosmas v. Bloomingdales Brothers*, 660 A.2d 83, 87 n.3 (Pa. Super. Ct. 1995). Additionally, we note that the report of a security guard may, by itself, provide the sole source of probable cause necessary for a valid arrest. *See Karkut v. Target Corp.*, 453 F.Supp.2d 874, 884 (E.D. Pa. 2006) ("the law is well-established that the report of a seemingly trustworthy security guard provides probable cause for an arrest") (citations omitted); *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782 (3d. Cir. 2000) (citing *Gramenos v. Jewel Co., Inc.*, 797 F.2d 432 (7th Cir. 1986) ("Police have reasonable grounds to believe a guard at a supermarket. We need not say that police always are entitled to act on the complaint of an eyewitness; a guard is not just any eyewitness. The chance that [security guards are] pursuing a grudge . . . is small . . . [because the] store will insist that guards err on the side of caution[,

as it] does not want to embarrass and anger an honest customer–not only because this is bad for business but also because a false charge of crime may lead to costly tort litigation under state law.")).

With these precedents in mind, we note that in the present case, Defendant Mesure informed Defendant Cornelious that he conducted surveillance and had personally witnessed Glenda Anderson steal the bracelet at issue.  Defendant Mesure further provided Defendant Cornelious with a case file that indicated that a 9" silver bracelet valued at $60 was missing from the same jewelry rack from which Glenda Anderson removed a bracelet on the date in question. When Defendant Cornelious attempted to contact the Plaintiffs to ascertain their version of the events, his efforts were thwarted by the false information Glenda Anderson provided to the Boscov's retail associate when applying for a credit card.  Given the above-referenced facts, the discovery of this false information could have reasonably been interpreted as evincing a consciousness of guilty related to the theft of the bracelet.  Accordingly, we believe that all of the facts known to Defendant Cornelious at the time the decision to prosecute was made, when considered in concert, could have reasonably led a prudent person to believe that Glenda Anderson had committed retail theft at the Camp Hill Boscov's on July 4, 2006.  Therefore, we believe that Officer Cornelious had probable cause to arrest

Glenda Anderson for retail theft. Consequently, the Plaintiffs cannot maintain either their federal or state malicious prosecution claims against Defendant Cornelious with regard to the underlying charge of retail theft lodged against Plaintiff Glenda Anderson.

Assuming, *arguendo*, that there was no probable cause to arrest the Plaintiffs on the conspiracy charges, they would still be required to satisfy the fourth, improper purpose prong of both the federal and state malicious prosecution causes of action. In this regard, Plaintiffs assert that Defendant Cornelious had a "personal ax[] to grind" against Sergeant McNaughton, (Doc. 68 p. 2), which caused him to press charges against the Plaintiffs in an attempt to upstage McNaughton, who had determined that there was insufficient evidence to do the same, (*id.* pp. 11-12). In support of this contention, Plaintiffs point to Defendant Cornelious' deposition wherein he testified that he did not like Sergeant McNaughton nor did he believe Sergeant McNaughton to be a good police officer. *See* Warren Scott Cornelious Dep. 40:17-41:25, December 3, 2008. However, the existence of Defendant Cornelious' distaste for Sergeant McNaughton could not, by itself, lead a rational juror to conclude that the same played an improper role in the former's decision to press charges against the Plaintiffs. It is simply too attenuated, and to make the leap from that personal dispute to the criminal charges

at issue here is to engage in pure speculation. To that end, the Plaintiffs have not identified any record evidence that would indicate that Defendant Cornelious' disdain for Sergeant McNaughton played a role in his decision to file charges against them. We also note that Defendant Cornelious testified to the contrary at his deposition. Cornelious Dep. 51:20-52:3 (Question: "Okay, what relationship does the relationship you have with Officer McNaughton bear to your choosing to bring these charges against Glenda and Vicki Anderson?" Answer: "None whatsoever."). Consequently, the Plaintiffs have failed to adduce evidence from which a reasonable juror could conclude that Defendant Cornelious possessed improper motives in arresting and prosecuting the Plaintiffs. Accordingly, it is our determination that the federal and state claims brought against Defendant Cornelious should be dismissed in their entirety because Plaintiffs cannot satisfy the fourth element of either the federal or state malicious prosecution calculus.

### B. Claims Against Defendant Mesure

The second element of both the federal and state malicious prosecution claims requires Plaintiffs to show that Defendant Mesure initiated the criminal proceedings against them. However, Defendant Mesure was a security guard who ostensibly was without the power to file formal criminal charges against any suspect. Indeed, Defendant Cornelious testified that he was the individual who

filed the criminal complaint and probable cause affidavit. *See* Cornelious Dep. 84:19-21; (*see also* Doc. 58 Exs. 10, 11). Nonetheless, Plaintiffs argue that the dictates of *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970), provide a theory by which private actors may be rendered state actors for purposes of § 1983 litigation.[8]

With regard to Plaintiffs' *Adickes* argument, Plaintiffs' pre-discovery position was that there was an agreement, understanding, or arrangement between Boscov's and the Camp Hill PD to prosecute all claims arising from the Camp Hill Boscov's. However, faced with the unfavorable results of discovery, Plaintiffs now concede that this was not the case. (Doc. 68 p. 12) ("Plaintiffs concede . . . that they were not able to develop any evidence to support the allegation of a prearranged plan."). Instead, Plaintiffs now assert that the conspiracy and/or arrangement between Defendants Mesure and Cornelious revolved around a mutual disdain for Sergeant McNaughton. However, Plaintiffs admit that

---

[8] *Adickes* stands for the proposition that a private entity may be liable under § 1983 if it was involved in a conspiracy the objective of which was to violate an individual's constitutional rights. *See Adickes*, 398 U.S. at 152 ("A private party involved in . . . a conspiracy, even though not an official of the State, can be liable under § 1983."). Accordingly, Plaintiffs contend that Defendant Mesure was involved in a conspiracy with Defendant Cornelious to bring charges against the Plaintiffs. Therefore, Plaintiffs urge that pursuant to *Adickes* Defendant Mesure could be held liable for initiating the criminal proceedings that were the object of the conspiracy. However, the aforementioned precedent only applies to § 1983 claims, meaning that for present purposes it can only apply to the Plaintiffs' federal malicious prosecution cause of action.

12

Defendant Mesure had never expressed to Defendant Cornelious an improper or ulterior motive in effectuating the arrest of Plaintiffs. (*See* Docs.58, 65 ¶¶ 28); Cornelious Dep. 111-112. Without such a communication, Plaintiffs cannot establish that Defendant Mesure and Defendant Cornelious conspired or mutually agreed to arrest them. The absence of such an agreement not only would prevent Plaintiffs from utilizing *Adickes* to hold Defendant Mesure liable for federal malicious prosecution, it would also prevent them from utilizing a state law conspiracy theory to hold Defendant Mesure liable for state malicious prosecution. *See Manning v. WPXI, Inc.*, 886 A.2d 1137, 1151 n.5 ("civil conspiracy requires that two or more persons combine or enter agreement to commit unlawful act or to do otherwise lawful act by unlawful means") (quoting *Burnside v. Abbott Lab.*, 505 A.2d 973, 980 (Pa. Super. Ct. 1985)). Since Plaintiffs cannot otherwise establish that Defendant Mesure was a "state actor" pursuant to *Adickes*, and since they have not provided us with any state law theory under which Defendant Mesure could be held liable for initiating criminal proceedings against the Plaintiffs, we are compelled to dismiss their malicious prosecution claims against Defendant Mesure for failure to establish the second element thereof.

For the foregoing reasons, we shall grant the pending Motions (Docs. 54, 57) in their entirety. An appropriate Order shall enter.